PARK TRANSPORTATION COMPANY, a Corporation, Appellant, v. STATE HIGHWAY COMMISSION ET AL.—60 S. W. (2d) 388.

Court en Banc, April 19, 1933.

*J. E. Turner* for appellant.

594

*John W. Mather*, Chief Counsel, and *John C. Collet*, Assistant Counsel, for State Highway Commission; *D. D. McDonald*, General Counsel, and *G. C. Murrell*, Assistant Counsel, for Public Service Commission; *Roy McKittrick*, Attorney-General, and *William Orr Sawyers*, Assistant Attorney-General, for Lewis Ellis.

HAYS, J.—This is an appeal from a final decree of the Circuit Court of Cole County dismissing a suit brought to enjoin interference with the plaintiff's motor trucks in the hauling of what may be termed overlength loads upon the highways of this State. The decree of dismissal was rendered upon demurrer to the bill. The suit is brought against the State Public Service Commission, the State Highway Commission, together with the individuals composing the

596

membership of each, and also the superintendent of the State Highway Patrol.

The plaintiff (appellant), a private business corporation of Missouri, is a licensed "contract hauler," and as such is engaged in hauling road material by motor trucks upon the public highways, over irregular routes throughout this State, and now and then transporting from supply houses overlength loads of road material on its trucks for necessary use in the construction of the State's highways at different times and places. The appellant's claimed right to transport overlength loads of such material without special permits from the Public Service Commission has been and is denied, by the respondents, its trucks stopped and delayed, its drivers arrested and summoned into court, and threatened with a continuation of such measures upon the trucks being so operated without such special permits. The State Highway Commission is alleged to have "arbitrarily notified appellant it would not issue permits for the making of such hauls from said supply houses to said points of use in road construction, but would compel all shipments of road material of above lengths and longer and other road material to be made by rail to the nearest railroad station to the points of highway construction." And that "said arbitrary attitude and ruling of said defendants deprive appellant of its property rights, its liberty and privileges, and the gains of its contracts, business and industry, without due process of law and without compensation, contrary to Section 7787 of Laws of Missouri, 1931, page 265, and Sections 4, 11, 21 and 30 of Article II of the Constitution of the State." It is further alleged that if the aforesaid arbitrary construction of said statute be its proper construction, then the statute is violative of the Fourteenth Amendment of the Constitution of the United States and violative of said sections of the State Constitution also; and, if carried out as threatened, will deprive appellant of the rights above mentioned, to its irreparable injury.

■ ■ I. To retain their vantage ground the respondents insist, first, that upon the facts injunction will not lie, because that remedy will not be granted to restrain the enforcement of a criminal law, absent a multiplicity of prosecutions or threatened irreparable injury, and because the unconstitutionality of the law would furnish no ground for injunctive relief.

Though, as is contended, the general rule is that injunction will not lie to prevent a prosecution for the violation of a criminal statute (State ex rel. v. Woods, 155 Mo. 425, 56 S. W. 474), and the mere unconstitutionality of a law furnishes no ground for injunctive relief (*Ibid.* l. c. 499), yet in such case injunction will lie where the threatened injury is irreparable and common-law remedies are inadequate.

[Shoe Co. v. Saxey, 131 Mo. 212, l. c. 221, 32 S. W. 1106; State ex rel. Chase v. Hall, 297 Mo. 594, 250 S. W. 64; In re Debs, 158 U. S. 565, 593.] The reason for the distinction is plain, for in the latter instance, as in this, restraint of prosecution is only incidental to the main object of the suit. Primarily where, as here, a valuable property right is sought to be protected from injury or destruction as the result of alleged misconstruction or maladministration of a law which, as claimed, is valid on its face and if rightly construed and applied confers certain privileges, but, as arbitrarily and wrongfully construed by the agencies charged with its administration as alleged, operates against appellant in denial of its constitutional rights, injunction will lie. It is said in 32 Corpus Juris, 244: "It is no objection to a bill to restrain the enforcement of a statute that the act is not void on its face, but is complained of only because its operation in the particular instance works a violation of a constitutional right." [Coal & Coke Ry. Co. v. Conley, 67 W. Va. 129, 67 S. E. 613; New Hampshire Gas & Elec. Co. v. Morse, 42 Fed. (2d) 490, 493, cit. Western Union Tele. Co. v. Andrews, 216 U. S. 165; N. Y. Cent. Ry. Co. v. U. S. (Interstate Commerce Commission Interveners), 288 Fed. 751, affirmed, 263 U. S. 603.]

"The declaration of unconstitutionality must be incidental to some relief sought, just as construction of a will, deed, or other instrument must be incidental to a prayer for relief." [Coal & Coke Ry. Co. v. Conley, supra, l. c. 618.] Analogous or corollary exemplifications of this principle may be found in State ex rel. Becker v. Wellston Sewer District et al., 332 Mo. 547, 58 S. W. (2d) 988, and State ex rel. Neu v. Waechter et al., 332 Mo. 574, 58 S. W. (2d) 971, decided at the present term. These cases were extraordinary proceedings in *mandamus*, a remedy which in its result is the reverse of injunction of the type now in hand, and which involved such error in the administration of statutes, by the agencies charged therewith, as would injure property rights of the complainants in violation of the Constitution. The quality of the wrong resulting from a constitutional act unconstitutionally administered is the same, and the injury as real to the injured, as those flowing from the administration of an unconstitutional act in accordance with its terms; and we perceive no reason why the same form of redress should not be applicable alike to each.

II. We are thus brought to the statute in question, Section 7787 of the Laws of 1931, at page 265, which prohibits the operation on the highways of motor vehicles (load included) of width and height and of a length in excess of those therein specified. Specifically exempted therefrom are "vehicles temporarily transporting agricultural implements or road making machinery, or road materials

598

or towing for repair purposes cars that have become disabled upon the highway.'' There is also a proviso authorizing the Highway Commission, when in its opinion the public safety so justifies, to issue special permits for the temporary operation of a vehicle which is overlength, each permit to be for a single trip or for a definite period, not exceeding sixty days, and designating the highways and bridges to be used. It is urged that appellant, by applying for a special permit under the proviso of the statute, is estopped to attack the construction placed by the respondents on the exception. We think there is no estoppel arising out of that matter, since it does not appear that respondents were misled or suffered any injury or disadvantage thereby or that the appellant received any benefit from the refusal of the permit. [Buck v. Kuykendall, 267 U. S. 307, 69 L. Ed. 623, 45 Sup. Ct. 324.]

III. Upon the alleged arbitrary ruling which requires such transportation by rail, appellant's position as it is stated in its brief is, in effect, (1) that the legislative intent, as manifested by the section in its entirety, was that all motor vehicles transporting overlength loads, other than those specified in the exception, could do so only under permits from the Highway Commission; but that all motor vehicles temporarily transporting overlength loads of road material, or any of the implements specified in the exception, have the right to do so without permit; (2) that appellant's hauling of road materials is within the exception, but that his rights in that regard are arbitrarily denied him and that such denial deprives him of his constitutional rights. Such denial, so it is said, has taken this form: First, the Highway Commission has arbitrarily ruled, and is enforcing its ruling, that plaintiff has no right to haul such overlength loads over the highway without a permit from said commission; second, that such permits will not be granted plaintiff except to haul material from the nearest railroad station to the point of road construction; and third, said commission is compelling the shipment of road material by rail from the points of production to the railroad station nearest the point of road construction. These propositions will be examined in inverse order.

It is argued that this so-called preferential treatment of the railroads is an arbitrary discrimination as against the appellant and other haulers within the purview of the statutory exception. It is said that this plan necessitates three separate movements of the materials, which it does: one by truck from the point of production to the station of the receiving railroad, the second thence by rail to the railroad station nearest the point of road construction and the third a movement by truck between the latter two points. It also con-

stitutes a classification of the haulage and a division thereof into two classes.

The entire Motor Vehicle Act, Article 8, Chapter 33, Revised Statutes 1929, as amended by the Laws of 1931, at page 304, has recently been under examination by the Federal Court for the Western District of Missouri (Schwartzman v. Stahl, 60 Fed. (2d) 1034) in an action brought by a contract hauler challenging the constitutionality of the entire Act as discriminatory, and particularly the exemption contained in Section 5265, namely: "Nor to motor vehicles used exclusively in transporting farm and dairy products from the farm or dairy to warehouse, creamery, or other original storage or market." In a three-judge opinion written by Judge REEVES, the general principles of law to be invoked in the case were stated. The following is an epitome of the expression:

■■■ The State has the right to regulate and control the movements of motor vehicles over its highways, and may exercise it in the interest of public convenience and safety and for the protection of the highways. Provisions of this character have been uniformly sustained. [Buck v. Kuykendall, 267 U. S. 307, 1. c. 314, 45 Sup. Ct. 324, 69 L. Ed. 623, 38 A. L. R. 286; Stevenson v. Binford et al. (D. C.), 53 Fed. (2d) 509; Kane v. State of New Jersey, 242 U. S. 160, 37 Sup. Ct. 30, 61 L. Ed. 222.] Though "a citizen may have, under the Fourteenth Amendment, the right to transport his property upon them by motor vehicles, yet he has no right to make the highways his place of business by using them as a common carrier for hire. Such use is a privilege which may be granted or withheld by the State in its discretion without violating the due process clause or the equal protection clause." [Packard v. Banton, 264 U. S. 1. c. 144, 44 Sup. Ct. 257, 60 L. Ed. 596.] There is a constant recognition of the principle that under this power the State "has a broad discretion in classification in the exercise of its power of regulation." [Smith v. Cahoon, 283 U. S. 553, 1. c. 560, 51 Sup. Ct. 582, 587, 75 L. Ed. 1264.] "Upon such classification no person can interpose an objection, save only in those cases where the classification or discrimination is entirely arbitrary," and "the burden is on the assailant to show that the classification is essentially arbitrary."

In holding that the exception was void the court there pointed out that the transportations contemplated in the exemption did not involve extensive use of the highways, and that the alleged discriminatory or unequal provision applied alike in favor of common carriers and contract haulers where their motor vehicles "are used exclusively in the transportation" of the excepted products in the manner provided.

The Supreme Court of the United States, in the case of Sproles v.

Binford et al., 286 U. S. 374, 52 Sup. Ct. 581, reviewed the Texas Motor Vehicle Act, which exempted motor vehicles of overlength "when used only to transport property from point of origin to the nearest practicable common carrier receiving or loading point or from a common carrier unloading point by way of the shortest practicable route to destination." In answering the complaint that the exception was designed to favor transportation by railroad as against transportation by motor trucks (contrary to the Fourteenth Amendment), the court, in an opinion delivered by Mr. Chief Justice HUGHES, said at page 394:

"The State has a vital interest in the appropriate utilization of the railroads which serve its people as well as in the proper maintenance of its highways as safe and convenient facilities. The State provides its highways and pays for their upkeep. Its people make railroad transportation possible by the payment of transportation charges. It cannot be said that the State is powerless to protect its highways from being subjected to excessive burdens when other means of transportation are available. The use of highways for truck transportation has its manifest convenience, but we perceive no constitutional ground for denying to the State the right to foster a fair distribution of traffic to the end that all necessary facilities should be maintained and that the public should not be inconvenienced by inordinate uses of its highways for purposes of gain. This is not a case of a denial of the use of the highways to one class of citizens as opposed to another, or of limitations having no appropriate relation to highway protection."

It was further said, at page 395, that the discrimination in said exception is simply in favor of short hauls and of operations which, as the district court found, are confined to smaller areas and greatly reduce the danger of traffic confusion and highway casualties. The court held also, at page 397, that a certain section (similar to the proviso before us) of the Act which authorized the issuance of special permits by the department for limited periods for the transportation "of such overweight or oversize or overlength commodities" upon their finding of the facts, did not offend against the Constitution.

That case was heard upon the facts, and the classification was made by the statute itself. In the case at bar we have no facts before us but such as are well pleaded and may be eked out by facts conceded in the briefs. Here the classification was made by the Highway Commission, an administrative fact-finding agency. No facts are pleaded or appear other than the ruling itself in support of the bare charge that the act or ruling was arbitrary, that is to say, it was capricious, unreasonable, or an abuse of the power possessed; nor is it charged or intimated that the commission usurped a legislative function or power. The substance of the complaint is that

601

the Highway Commission's construction of the statute is arbitrary and discriminatory, rendering it void under the Constitutions, State and Federal, because it denies to appellant and other haulers of road materials the same rights and privileges to use the public highways that are afforded others, and authorize search and seizure of appellant's motor vehicles, depredation and damage to its property, constitutional rights and profits, and denying to it the same liberties afforded others.

In these circumstances, and in view of the grounds on which the classification or determination is assailed, we think that under the principles laid down in the Sproles and Schwartzman cases, supra, the classification did not offend against the constitutional provisions invoked by appellant, as it was not made to appear to have been arbitrary or discriminatory. The power to classify was conceded, we think, by appellant's assailing the classification upon the manner and effect of its exercise alone. With the power so conceded, the conclusions reached in the Sprole case as set out above and the principles laid down there and in the Schwartzman case, supra, clearly apply to this question and are contrary to appellant's contention. With respect to appellant's right to contract, it is to be noted that "legislation otherwise within the scope of acknowledged state power, not unreasonably or arbitrarily exercised, cannot be condemned because it curtails the power of the individual to contract." [Hardware Dealers Mutual Fire Insurance Co. v. Glidden Co. et al., 284 U. S. 151, l. c. 157.] And as a sequence, and for the same reasons, the bill contained insufficient facts to entitle appellant to equitable relief in that regard. The mere characterization of respondents' acts as arbitrary, without stating facts which in themselves indicate that quality, make the allegation nothing more than a conclusion, the truth of which is not admitted by a demurrer. [Stephens v. Mound City Liverymen's Assn., 295 Mo. 596, 246 S. W. 40; Normandy Consol. School Dist. v. Harrall, 315 Mo. 602, 286 S. W. 86, l. c. 90.]

IV. The question raised by appellant upon the Highway Commission's right to require a permit for the hauling of road material from point of production to the nearest station of the receiving carrier and from the carrier's unloading station nearest the point of road construction, was determined in the Sprole case upon a proviso of the same general tenor as the one in the act here under review, and is well ruled by the conclusion drawn and expressed concerning the proviso there; unless appellant's so-called temporary transportation of overlength loads is authorized as of right by the exemption in question.

V. The contention in regard to such right, and the principal one in the case, is that *all* motor vehicles engaged in the temporary trans-

portation of road material may rightfully operate therein without permit.

The appellant is a "contract hauler over irregular routes," as defined by statute, the terms meaning "any person, firm or corporation engaged, as its principal business, in the transportation for compensation or hire of persons and/or property for a particular person, persons or corporation to or from a particular place or places under express or individual agreement or agreements, etc.;" and "irregular routes" are that portion of the highways over which a regular route has not been established. It is alleged in the bill that appellant is engaged in hauling road material to be used in the construction of public highways to various points of construction. The brief states that such hauls are made from the plants of production of which one, at least, appears to be located in the city of St. Louis. The bill states no facts, circumstances or particulars connected with the alleged interrupted or anticipated hauling. It alleges only that its operations are arbitrarily interrupted, denied and threatened with prevention in the manner already stated.

Upon this record it seems obvious that there is no showing that appellant's transportation of overlength materials come within the purview of the statutory exception. The only fact that lends any countenance to the contention is the statement that such hauls are occasional. It receives no support whatever from appellant's characterization of the hauls as "temporarily necessary" or as "temporarily transporting." The expression "temporarily transporting" as used in the statute is a definition, a term of legal signification, to be interpreted as a matter of law. The duty is imposed by the statute upon a fact-finding agency to determine when the facts of a given situation meet the legal definition and authorize the transportation. Appellant seems to hold the view that its own *temporary necessity* is the same thing as temporarily transporting, notwithstanding they are distinctly different. It is quite apparent that the latter expression refers to the use made of the highways, and implies that the use in any particular instance is of short duration and frequency as compared with the ordinary use of the highways by motor trucks, with a corresponding limitation of interference with other traffic and of wear and strain on the highways. But aside from those considerations, it is evident that a proper regard for the matters just noted, involving as they do the safety and convenience of the traffic as a whole and proper use and preservation of the highways, is not inconsistent with reasonable regulation and restraint put upon those who, in the interest of their own private business, use the highways in this exceptional transportation. And in the varying situations which must necessarily arise therein, the law has properly provided, and clothed with a reasonable discrimination, an administrative body

to determine, in the first instance and upon a factual investigation, the applicability of the exception as occasions may arise. No facts are charged which show any arbitrary exercise of such right of determination by any of the respondents. The bill, in that respect also, fails to present facts entitling appellant to injunctive relief.

This disposes of all questions we think it necessary to discuss. We regard the demurrer as properly ruled. The final decree dismissing appellant's bill is therefore affirmed. All concur, except *Leedy, J.*, not sitting.